IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| JILL R. GILES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 1:17-cv-896 |
| | ) | |
| WILSON COUNTY BOARD OF | ) | JUDGE CAMPBELL |
| EDUCATION and/or WILSON | ) | MAGISTRATE JUDGE |
| COUNTY SCHOOLS, | ) | NEWBERN |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Pending before the Court is Defendant's Motion for Summary Judgment (Doc. No. 41), and Plaintiff's Motion for Summary Judgment. (Doc. No. 44). Plaintiff and Defendant each filed a response in opposition (Doc. Nos. 49, 52) and both replied. (Doc. Nos. 57, 58). For the reasons discussed below, Defendant's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part, and Plaintiff's Motion for Summary Judgment is **DENIED**.

Also pending before the Court is Plaintiff's Motion to Strike Declaration of Angela Kincaid (Doc. No. 60) and Defendant's Motion to Strike and Notice of Objection to Plaintiff's Notice of Filing New Authority and Alternative Motion for Leave to Respond (Doc. No. 64). The Court **DENIES** both motions as moot.

## I. FACTUAL BACKGROUND

Defendant employed Plaintiff as the Principal of W.A. Wright Elementary School from August 2004 to September 2015. (Doc. No. 53 ¶ 1). In 2012, Plaintiff was diagnosed with diverticulitis. (*Id.* ¶ 2). A "flare up" of Plaintiff's diverticulitis caused Plaintiff to experience severe stomach cramps, diarrhea, nausea, and the need for multiple trips to the restroom. (*Id.* ¶ 3). Often

times, Plaintiff's symptoms occurred in the morning. (*Id.* ¶ 5). If Plaintiff felt like she was going to be late for work based on how she felt in the morning, she would send a text or an email to her staff at school, and if Plaintiff was going to arrive at work later than 10:45am she would enter an absence for half a day. (*Id.* ¶¶ 8, 10). At the end of the 2014-15 school year, Plaintiff experienced numerous episodes due to her diverticulitis and requested FMLA leave from March 30, 2015 to May 1, 2015; Defendant's approved Plaintiff's request. (*Id.* ¶¶ 12-13). Exclusive of her FMLA leave, Plaintiff reported being tardy to work twenty-one times during the 2014-15 school year. (*Id.* ¶ 14).  During the 2015-16 school year, Plaintiff continued to need days off from work or to arrive late on certain days due to her medical condition. (Doc. No. 50 ¶ 15)

Due to Plaintiff's illness, the school was without a principal at its disposal, and Plaintiff worried that her attendance issues was not best for the school. (Doc. No. 53 ¶ 20). On September 29, 2015, Mary Ann Sparks ("Ms. Sparks"), the schools Supervisor/Deputy Director of Human Resources for Wilson County Schools, and Dr. Donna Wright ("Dr. Wright"), Director of Schools for Wilson County Schools, received an email from Plaintiff requesting to work extra over fall break or on holidays to make up missed work time. (*Id.* ¶¶ 17, 19, 21). During an October 1, 2015 meeting, Plaintiff, Ms. Sparks, and Dr. Wright discussed Plaintiff's medical condition and absences from school. (*Id.* ¶ 22). Plaintiff again requested she be allowed to make up absences on weekends and holidays. (*Id.*). Dr. Wright and Ms. Sparks informed Plaintiff that Wilson County Schools could not offer the accommodation and instead suggested that Plaintiff switch from the Principal position to the Assistant Principal position. (*Id.* ¶¶ 23-24). Dr. Wight, Ms. Sparks, and Plaintiff agreed to provide Plaintiff an accommodation by switching her position to Assistant Principal and modifying her regular daily work schedule to 8:30am to 4:00pm. (*Id.* ¶ 26). The transfer to Assistant Principal was intended to allow Plaintiff to work fewer days, 210 days per

year instead of 260 days per year, and allow her rest for her condition. (*Id.* ¶¶ 27-28). The change in hours also allowed Plaintiff additional flexibility in her schedule because she informed Dr. Wright and Ms. Sparks that her condition made it difficult for her in the mornings. (*Id.* ¶ 29).

On October 5, 2015, Plaintiff was transferred to the role of Assistant Principal of W.A. Wright Elementary School, but was paid at the rate of a Principal. (*Id.* ¶¶ 35-36). Plaintiff was to report a half day absence any time she was more than one (1) hour late to school. (*Id.* ¶ 38). After assuming the Assistant Principal role, from October 5, 2015 to May 12, 2016 Plaintiff was at least one hour late approximately thirty-three days and twenty-seven of those absences were related to Plaintiff's condition. (*Id.* ¶ 42). On October 22, 2015, Plaintiff requested from Defendant her years of experience and retirement date; before October 22, 2015, Plaintiff and Ms. Sparks never discussed retirement. (*Id.* ¶¶ 40-41). On April 21, 2016, Plaintiff, Ms. Sparks, and Dr. Wright attended an informal dinner meeting. (*Id.* ¶ 47). On April 22, 2016, Ms. Sparks emailed Plaintiff information about her eligibility for retirement and information regarding disability retirement, and also suggested she schedule a meeting with the Tennessee Consolidation Retirement System ("TCRS"); Plaintiff thanked Ms. Sparks for the information. (*Id.* ¶¶ 51). Plaintiff met with a representative of the TCRS on May 6, 2016, and was informed she was not eligible for disability retirement; Plaintiff informed Ms. Sparks that she would not be able to retire with full benefits until she had worked thirty years. (*Id.* ¶¶ 52-53). At the conclusion of the 2015-2016 school year, Plaintiff needed 1.5 years of employment to reach the thirty years of employment that would make her eligible for full retirement benefits. (*Id.* ¶ 48).

At the end of the 2015-16 school year, a second full-time homebound teacher position was created for Plaintiff by combining multiple part-time positions. (*Id.* ¶ 76). Homebound teachers work 200 days per year. (*Id.* ¶ 74). On May 25, 2016, Plaintiff, Dr. Wright, and Ms. Sparks had a

meeting where Plaintiff was informed she was being transferred to a homebound teaching position for the 2016-17 school year. (*Id.* ¶ 77). After Ms. Sparks and Dr. Wright informed Plaintiff she would be transferred to the homebound teaching position, Plaintiff did not request details regarding the duties of a homebound teacher and she gave no response or alternate suggestion. (*Id.* ¶ 79). Plaintiff was not told she would have to retire if she did not accept the homebound teaching position and retirement was not discussed at the May 25, 2016 meeting. (*Id.* ¶¶ 79-80). On May 27, 2016, Plaintiff notified Wilson County Schools she was retiring at the end of the 2015-16 school year and declined the homebound teaching position. (*Id.* ¶ 87).

On September 19, 2017, Plaintiff filed an Amended Complaint against Defendant for unlawful employment practices under the Family Medical Leave Act ("FMLA"), Americans with Disabilities Act ("ADA"), Tennessee Disability Act ("TDA"), Age Discrimination in Employment Act ("ADEA") and Tennessee Human Rights Act ("THRA")[1]. (Doc. No. 18). Plaintiff asserts Defendant interfered with Plaintiff's rights to continued medical leave, benefits and protections of the FMLA and retaliated against her for requesting and exercising her medical leave under the FMLA. (*Id.* ¶ 27). Plaintiff also asserts Defendant discriminated against Plaintiff because of her disability in violation of the ADA and TDA; failed to reasonable accommodate her disability beyond May 2016; failed to engage in the ADA-mandated good faith interactive process; and retaliated against her for having requested a reasonable accommodation and exercised medical leave. (*Id.* ¶ 28). Plaintiff requests back pay, front pay, compensatory damages, liquidated damages, and punitive damages. (*Id.* ¶¶ 2-6).

---

[1] Plaintiff voluntarily dismisses her age discrimination claim under the ADEA and THRA. (Doc. No. 52 at 2).

Defendant argues summary judgment is appropriate because Plaintiff cannot establish she was a qualified employee under the ADA or that she requested a reasonable accommodation. (Doc. No. 41). Defendant further argues Plaintiff's FMLA claims should be dismissed because she was provided all requested FMLA benefits and there is no causal connection between the exercise of her FMLA rights and her job change. (*Id.*). Plaintiff argues summary judgment should be granted in her favor because as a matter of law Defendants violated her rights under the FMLA and the ADA by revoking her reasonable accommodation because of her disability. (Doc. No. 44).

## II.    STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party, and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of

evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

## III. ANALYSIS

### A. CONSTRUCTIVE DISCHARGE

Defendant argues Plaintiff cannot prove constructive discharge, because Defendant transferred Plaintiff to homebound teacher for the purpose of allowing her to fulfill her goal of working thirty years, and Plaintiff would have accepted a demotion to reach this goal. (Doc. No.42 at 29). Defendant further argue the reassignment to homebound teacher was an attempted accommodation. (*Id.* at 30).

It is Plaintiff's burden to prove constructive discharge by showing that Defendant deliberately created intolerable working conditions, as perceived by a reasonable person, and did so with the intention of forcing her to quit. *Logan v. Denny's Inc.,* 259 F.3d 558, 568–69 (6th Cir. 2001). A constructive discharge requires a determination that "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Ross v. Pfizer, Inc.,* 375 Fed. Appx. 450, 457 (6th Cir. 2010). Factors courts considers in determining whether such "intolerable working conditions" exist include the presence of the following: demotion; reduction in salary; reduced job responsibilities; reassignment to menial or degrading work; reassignment to work under a younger supervisor; badgering, harassment or humiliation by the employer calculated to encourage the employee's resignation; offers of early retirement; or continued employment on terms less favorable than the employee's former status. *Logan*, 259 F.3d at 569. A finding of constructive discharge also requires the court to look at both the "objective feelings of the employee, and the intent of the employer." *Kinamore*

*v. EPB. Elec. Util.,* 92 Fed. Appx. 197, 204–05 (6th Cir. 2004). An employer's intent can be shown by demonstrating that the employee quitting was a foreseeable consequence of the employer's action. *Id.* at 205.

Plaintiff argues there is a genuine issue of material fact because a reasonable employee in her position would feel compelled to retire as a result of Defendant's conduct. (Doc. No. 52 at 21). Plaintiff argues Defendant's conduct included unilaterally revoking her reasonable accommodation without speaking to her, involuntarily transferring her to a traveling homebound teacher position with different duties, and presenting the position to her as her only option for remaining employed. (*Id.*). Finally, Plaintiff argues Defendant knew she could not perform the duties of a homebound teacher due to the extensive travel and not having ready access to a private restroom, and Defendant only decided to demote her to the homebound job after she declined the invitation to retire and apply for disability in May 2016. (*Id.* at 22).

The Court finds no evidence in the record to support a finding that circumstances existed such that it was "objectively reasonable" for Plaintiff to terminate her employment with Defendant. Plaintiff was not constructively discharged simply because she was demoted to homebound teacher, and she presents no facts of difficult or unpleasantness to the point she was compelled to resign. *See Johnson v. Peake*, 2010 WL 11493689 (W.D. Tenn. 2010) (noting that, "[a] demotion within a company does not amount to a constructive discharge unless the proffered employment options would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign."). Plaintiff presents no evidence that her working conditions were intolerable, and at most Plaintiff offers evidence of Defendant speaking about her retirement options, but not of a workplace "permeated with discriminatory intimidation that compelled her to resign." *Shoap v. City of Crossville*, 2018 WL 3533702 at *5 (M.D. Tenn.

2018). For this reason, any discrimination claim based on constructive discharge as an adverse employment action is **DISMISSED**. All remaining claims pertain only to Plaintiff's demotion, which qualifies as an adverse employment action. *See Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 303 (6th Cir. 2016).

## B. PLAINTIFF'S FMLA CLAIMS

The Sixth Circuit "recognizes two distinct theories of wrongdoing under the FMLA." *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007.) "The 'entitlement' or 'interference' theory" makes "it unlawful for employers to interfere with or deny an employee's exercise of her FMLA rights" and "require[s] the employer to restore the employee to the same or an equivalent position upon the employee's return." *Id.* "The 'retaliation' or 'discrimination' theory, on the other hand...prohibits an employer from discharging or discriminating against an employee for 'opposing any practice made unlawful by' the Act." *Id.* (internal citations omitted). Plaintiff brings both types of claims in this case. Both the FMLA interference and FMLA retaliation claims are analyzed utilizing the burden shifting approach, *Donald v. Sybra, Inc.*, 667 F.3d 757, 762 (6th Cir. 2012), which first requires Plaintiff to establish a prima facie case.[2]

"To establish a prima facie case of FMLA interference, [Plaintiff] must show that '(1) she was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of her intention to take leave; and (5) the employer denied the employee FMLA benefits to which she

---

[2] Plaintiff argues she has direct evidence of FMLA retaliation. Direct evidence "must establish not only that the plaintiff's employer was predisposed to discriminate on the basis of [the FMLA], but also that the employer acted on that predisposition." *Daugherty v. Sajar Plastics, Inc.,* 544 F.3d 696, 706 (6th Cir. 2008). Here, there are no express statement in the record of a desire to terminate Plaintiff because she exercised her FMLA-qualifying leave. Instead, Defendant asserts Plaintiff's termination was due to her "excessive absenteeism." Because Plaintiff has no direct evidence, she is subject to the traditional *McDonnell Douglas* burden-shifting analysis.

was entitled." *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006)). "To establish a prima facie case of FMLA retaliation, [Plaintiff] must show that (1) she was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action." *Id.*

As the preliminary matter, Defendant argues that, no matter how couched, both of Plaintiff's FMLA claims fail because she did not provide sufficient notice. Although this presents a close question, the Court cannot determine this issue as a matter of law based on the facts that have been presented.

"[T]o invoke the protection of the FMLA, an employee must provide notice and a qualifying reason for requesting the leave—'nothing in the statute places a duty on an employer to affirmatively grant leave without such a request or notice by the employee.'" *Miles v. Nashville Elec. Serv.*, 525 Fed. Appx. 382, 385 (6th Cir. 2013) (quoting *Brohm v. JH Props., Inc.*, 149 F.3d 517, 523 (6th Cir. 1998)). The Sixth Circuit has "explained that 'the critical test' for substantively-sufficient notice is whether the information that the employee conveyed to the employer was reasonably adequate to apprise the employer of the employee's request to take leave" covered by the FMLA. *Id.* at 386 (quoting *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 421 (6th Cir.2004)). "Although the employee need not expressly mention the FMLA, she must 'give [ ] the employer enough information for the employer to reasonably conclude that an event described in [the] FMLA ... has occurred.'" *Id.* (quoting *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 451 (6th Cir.1999)).

In support of its motion for summary judgment, Defendant argues Plaintiff was familiar with the process of requesting FMLA leave, as she had requested it from March 30, 2015 to May 1, 2015, but intentionally failed to request FMLA leave for the 2015-16 school year. (Doc. No. 42 at 26). Defendant asserts it was not required to remind or offer Plaintiff FMLA leave or assume Plaintiff's sick days were intended by her to be considered unpaid FMLA leave, especially because Plaintiff did not want FMLA leave a second time due to her condition. (*Id.* at 27). Plaintiff argues that while she did not wish to request a large block of extended medical leave, she did want intermittent FMLA leave, but did not know what it was called and Defendant failed to notify her of intermittent FMLA leave. (Doc. No. 58 at 4). Plaintiff further argues in her memorandum in support of summary judgment that Defendant was aware of Plaintiff's FMLA-qualifying condition from 2012 through the end of her employment in 2016, because she regularly communicated to Ms. Sparks and Dr. Wright about her condition and need for leave. (Doc. No. 45). Plaintiff did not have to expressly assert rights under the FMLA or even mention the FMLA, but argues she only had to state that leave was needed due to her condition, and the employer must obtain any additional required information through informal means. *Id.* (citing *Easter v. Asurion Ins. Servs.*, 96 F. Supp. 3d 789, 795 (M.D. Tenn. 2015)).

Plaintiff is correct that calling Defendant and providing specific information as to the cause of her absence as being her condition is sufficient notice of FMLA qualifying condition. *See* 29 C.F.R. § 825.503(b) ("Calling in 'sick' without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act"). However, the facts are disputed as to whether Plaintiff wanted to take FMLA leave. Plaintiff had 1.5 years left of employment to reach thirty years of employment to make her eligible for full retirement benefits. (Doc. No. 53 ¶ 48). According to the Wilson County Board of Education Policy, if Plaintiff took

FMLA leave those days would not be "treated as credited service for purposed of benefit accrual, vesting and eligibility to participate," related to retirement plans. (Doc. No. 59 ¶ 1; Doc. No. 47-2, Ex. 7 at 4). According to Defendant, Plaintiff intentionally did not request FMLA leave for the 2015-16 school year because she wanted to be at school as much as possible. (Doc. No. 53 ¶ 16; Pl. Depo, Doc. No. 47-5 at 108-110). However, Plaintiff argues she was never made aware of "intermittent" FMLA leave and therefore did not request it. (Pl. Depo. at 291-293; Doc. No. 54, Hyder Decl. ¶¶ 14-15; Doc. No. 55, Kemp Decl. ¶¶ 14-15; Doc. No. 56, Jackson Decl. ¶¶ 13-14)). Ultimately, it will be for a jury to decide whether Plaintiff wanted her absences designated as intermittent FMLA leave and if so, whether she properly notified Defendant.

In regards to the retaliation claim, Defendant argues Plaintiff refused to exercise her rights under the FMLA during the 2015-16 school year, and Defendant cannot retaliate against Plaintiff for something Plaintiff refused to do. (Doc. No. 49 at 14). Just as there is a jury question on whether notice was properly given and if Plaintiff wanted to exercise her FMLA leave, there is a jury question on whether Defendant retaliated against Plaintiff under the FMLA.

Based on the foregoing, the Court **DENIES** parties' cross-motions for summary judgment on Plaintiff's FMLA interference and retaliation claims.

## C. PLAINTIFF'S ADA AND TDA CLAIMS

Title I of the ADA and the Tennessee Disability Act prohibits covered employers from discriminating against a "qualified individual on the basis of disability with regard to hiring, advancement, training, termination, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a), Tenn. Code Ann. § 8-50-103(b). Claims are analyzed using the familiar

burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[3]

As with the FMLA, Plaintiff argues this case is a direct evidence case because Defendant relied on Plaintiff's disability in removing her from her administrator position. (Doc. No. 45 at 20-21). However, as previously mentioned Defendant placed Plaintiff in the homebound teaching position due to Plaintiff's absenteeism. Because Plaintiff has not presented direct evidence of ADA discrimination,[4] the Court will assess Plaintiff's ADA claims under the *McDonnell* burden-shifting analysis.

### 1. Discrimination

Plaintiff argues Defendant discriminated against her under the ADA by failing to reasonably accommodate her disability. To establish a *prima facie* case of ADA discrimination, Plaintiff must show: (1) she is disabled, (2) she is otherwise qualified for the position, (3) with or without reasonable accommodation, (4) she suffered an adverse employment action, (4) Defendant knew or had reason to know of Plaintiff's disability, and (5) the position remained open while

---

[3] "A claim brought under the THA [Tennessee Handicap Act, now known as the TDA] is analyzed under the same principles as those utilized for the Americans with Disabilities Act." *Cardenas–Meade v. Pfizer, Inc.*, 510 Fed. Appx. 367, 369 n. 2 (6th Cir.2013) (quoting *Sasser v. Quebecor Printing (USA) Corp.*, 159 S.W.3d 579, 584 (Tenn. Ct. App. 2004)).

[4] By way of examples, courts have found that (1) a supervisor's alleged statement that she chose a particular candidate in order "to maintain racial balance" constituted direct evidence of discriminatory intent, *Taylor v. Board of Educ. of Memphis City Sch.,* 240 Fed. Appx. 717, 720 (6th Cir. 2007); (2) a supervisor's alleged statement that an Italian–American probationary employee was a "dirty wop" and that there were too many "dirty wops" working at the facility constituted direct evidence of national origin discrimination, and the supervisor's alleged statement that a 46 year old employee was "no spring chicken" and he would never be a supervisor because of his age was direct evidence of age discrimination, *DiCarlo v. Potter,* 358 F.3d 408, 471 & 418 (6th Cir. 2004); and (3) providing an employee who intended to return from medical leave with a letter which stated that "given [that] you are unable to perform the tasks of your job, we have found it necessary to hire someone to fill the vacancy created by your need to take long term disability" and that "[d]ue to your long term disability we must terminate your employment" constituted direct evidence of disability discrimination under the ADA, *Coffman v. Robert J. Young Co., Inc.,* 871 F.Supp.2d 703, 709 & 713 (M.D. Tenn. 2012).

Defendant sought other applicants or the disabled individual was replaced. *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011). Defendant argues Plaintiff's claim must fail because she was not otherwise qualified for the position of Assistant Principal, and rejected a reasonable accommodation provided by the Defendant. (Doc. No. 42 at 12).

a) Prima Facie

The term "qualified individual" means "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8) (2008). Essential functions are "fundamental job duties of the employment position the individual with a disability holds." 29 C.F.R. § 1630.2(n)(1) (2010). "[C]onsideration shall be given to the employer's judgment as to what functions of a job are essential...." *Id.* "If the employer claims [ ] that the disabled individual would be unqualified to perform the essential functions of the job even with the proposed accommodation, the disabled individual must prove that he or she would in fact be qualified for the job if the employer were to adopt the proposed accommodation." *Monette v. Elec. Data Sys. Corp.,* 90 F.3d 1173, 1184 (6th Cir. 1996).

Defendant argues regular, in-person attendance is an essential function, and an employee who cannot meet the attendance requirements of the job cannot be considered "qualified." (Doc. No. 42 at 13-14) (citing *Starks-Umoja v. Fed. Express Corp.*, 341 F. Supp. 2d 979, 995 (W.D. Tenn. 2003). The Job Description of Principal and Assistant Principal specifically states that an essential function of both positions is to attend work regularly and on-time. (*Id.* at 14). Defendant argues after Plaintiff assumed the role of Assistant Principal, from October 5, 2015 to May 12, 2016, Plaintiff was absent at least half a day thirty-three times. (*Id.*). Twenty-seven of those absences were related to her condition. (*Id.*).

Plaintiff argues in her motion for summary judgment that her unblemished employment history and her successful work since 2012, with a reasonable accommodation, is sufficient to show she was "otherwise qualified" for the position of Assistant Principal. (Doc. No. 45 at 22). Plaintiff further argues there were no issues with her performance when she was at work, which was a majority of the time, and she completed her assigned tasks. (*Id.* at 22-23). Plaintiff asserts she never violated any attendance or other policies, nor were her absences "excessive" under Defendant's work rules and policies. (*Id.* at 23). In fact, Defendant continuously assured and promised Plaintiff that everything was fine and she was never disciplined or counseled about her "excessive absenteeism" or "unexcused absences." (*Id.*).

"Excessive absenteeism can render an individual unqualified under the ADA as a matter of law, except in the exceptional case where an employee can effectively perform at home without a substantial reduction in the quality of his performance." *Smith v. Ameritech*, 129 F.3d 857, 867 (6th Cir. 1997) (citing *Vande Zande v. Wisconsin*, 44 F.3d 538, 545 (7th Cir. 1995)); *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 419 (6th Cir. 2004); *see also Banks v. Bosch Rexroth Corp.*, 610 Fed. Appx. 519 (6th Cir. 2015); *Wheeler v. Jackson Nat'l Life Ins. Co.*, 159 F. Supp. 3d 828 (M.D. Tenn. 2016). Here, the Court finds as a matter of law attendance is an essential function for an Assistant Principal. However, the Court cannot determine, based on the record, whether Plaintiff's absences were "excessive." Based on Plaintiff's accommodation, she was allowed to work fewer days and instead of the 260 days per year she was only required to work 210 days. (Doc. No. 50 ¶ 45; Doc. No. 53 ¶ 32; Doc. No. 50 ¶ 19). Furthermore, Defendant provides no evidence that Plaintiff exceeded her absences in violation of the school attendance policy. *See Starks-Umoja v. Fed. Express Corp.*, 341 F. Supp. 2d 979 (W.D. Tenn. 2003) (finding plaintiff's continuous absences failed to meet the attendance requirements for a position at FedEx after

exhausting her medical leave of ten days); *Wheeler v. Jackson Nat'l Life Ins. Co.*, 19 F. Supp. 3d 828, 842 (M.D. Tenn. 2016) (finding plaintiff was not "otherwise qualified" because plaintiff had exhausted his available intermittent FMLA leave). Plaintiff was not absent any longer than she was entitled to be under Defendant's policies. (Sparks Depo. at 154; Doc. No. 50-2). Therefore, Plaintiff has set forth a prima facie case for ADA discrimination, and Plaintiff must show Defendant's reason for demoting Plaintiff, i.e., exclusive absenteeism, was pretext.[5]

b) Pretext[6]

Defendant argues Plaintiff's absences affected the school negatively, as reported by both Ms. Sparks and Dr. Wright. (Doc. No. 42 at 21). Defendant states it did not terminate Plaintiff, but instead attempted to find a position for her that would allow her to reach thirty years of service and retire with full benefits. (*Id.*). Defendant transferred her to the position of homebound teacher as an accommodation, due to her tardiness and absences. (*Id.*).

Plaintiff can demonstrate that Defendant's proffered legitimate, nondiscriminatory basis for her demotion is pretext by showing that the reason "either (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action." *Ferrari v. Ford Motor Co.*, 825 F.3d 885, 895 (6th Cir. 2016) (ADA discrimination case). For ADA retaliation, a plaintiff must demonstrate that the proffered reason is not the real reason and that the real reason

---

[5] Plaintiff also argues that she received no notice of progressive discipline regarding her attendance violations. The Court finds this argument unpersuasive. *See Wheeler*, 159 F. Supp. 3d at 853 (stating "[Plaintiff's] argument rests on the faulty premise that an employer who, for some period of time, does not harshly discipline an employee for absences is somehow forever bound to maintain a "hands-off approach" with that employee. This is not the law. In short, a lack of prior discipline of [Plaintiff] by [Defendant] for absenteeism does not establish that regular and predictable attendance was not required for the [] position.").

[6] Plaintiff does not argue pretext in her response brief or in her motion for summary. Therefore, the Court will look to the statement of undisputed facts to determine if Plaintiff can show pretext.

was unlawful. *Williams v. AT&T Serv. LLC*, 847 F.3d 384, 396 (6th Cir. 2017). "Pretext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009) (discussing pretext in the Title VII context). "[A]t bottom the question is always whether the employer made up its stated reason to conceal intentional discrimination." *Id*.

First, Defendant's reason for demoting Plaintiff had a basis in fact because it is undisputed that Plaintiff was at least one hour late or absent approximately 33 out of 210 work days during the 2015-16 school year. (Doc. No. 53 ¶ 42; Doc. No. 41-6, Ex. F, F-1; Doc. No. 41-8, Ex. H; Doc. No. 41-15, Ex. O). Defendant also asserts that while Plaintiff was Assistant Principal Ms. Sparks received an email from Peggy Druyor that she was frustrated with Plaintiff and her absences. (Doc. No. 41-16, Ex. P). Second, Plaintiff does not proffer any evidence which would tend to prove an illegal motivation was more likely the reason for Plaintiff's demotion than the reason offered by Defendant. *See Smith v. Leggett Wire Co.*, 220 F.3d 752, 759-60 (6th Cir. 2000). Finally, Plaintiff does not provide the Court with other employees who were similarly situated to the Plaintiff. Showing insufficient motivation "ordinarily[ ] consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) (overruled on other grounds, *Geiger v. Tower Automotive*, 579 F.3d 614, 621(6th Cir. 2009)). Because Plaintiff fails to establish pretext, summary judgment for Plaintiff's ADA and TDA discrimination claim is appropriate and Defendant's motion is **GRANTED**.

### 2. Retaliation

Neither Plaintiff nor Defendant move for summary judgment on Plaintiff's ADA retaliation claim. Defendant seeks to dismiss the claim in its Reply to Plaintiff's Response (Doc. No. 57), but this did not give Plaintiff the opportunity to present a counter-argument. Because neither party moved for summary judgment on the ADA retaliation claim, the Court will not dismiss the claim.

### 3. Failure to Reasonably Accommodate

Plaintiff argues Defendant failed to reasonably accommodate her because the Assistant Principal position established that her requested accommodations—intermittent medical leave, flexible hours in the morning, and readily accessible private restroom—were reasonable and allowed her to perform the job of Assistant Principal without imposing an undue hardship on the school. (Doc. No. 52 at 13). Defendant argues it moved Plaintiff to a homebound teaching position because Plaintiff's absences as Assistant Principal caused an undue hardship. (Doc. No. 57 at 10-11).

In order to establish a prima facie case for failure to accommodate, a plaintiff must show that: (1) she is disabled within the meaning of the Act; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) her employer knew or had reason to know about her disability; (4) she requested an accommodation; and (5) the employer failed to provide the necessary accommodation. *Johnson v. Cleveland City Sch. Dist.*, 443 Fed. Appx. 974, 982-83 (6th Cir. 2011). The employee also bears the burden of proposing reasonable accommodations; an employee's claim must be dismissed if the employee fails to identify and request such reasonable accommodations. *See Tubbs v. Formica Corp.,* 107 Fed. Appx. 485, 488–89 (6th Cir.2004). Once a plaintiff establishes a prima facie case, the burden shifts to the employer to demonstrate that any particular accommodation would impose an undue hardship on the employer. *Johnson*, 443 Fed.

Appx. at 983. The ADA lists "reassignment to a vacant position" as a possible reasonable accommodation mandated by the statute, 42 U.S.C. § 12111(9)(B), and multiple Circuits have held that the ADA requires an employer to consider re-assignment to a vacant position if the disabled employee cannot be reasonable accommodated in his or her current job. *See Cassidy v. Detroit Edison Co.,* 138 F.3d 629, 634 (6th Cir. 1998); *Smith v. Midland Brake, Inc.,* 180 F.3d 1154 (10th Cir. 1999) (en banc); *Feliciano v. Rhode Island,* 160 F.3d 780, 785–86 (1st Cir. 1998); *Aka v. Washington Hosp. Ctr.,* 156 F.3d 1284,1300–01 (D.C. Cir. 1998) (en banc); *Mengine v. Runyon,* 114 F.3d 415, 418 (3d Cir. 1997); *Gile v. United Airlines, Inc.,* 95 F.3d 492, 498–99 (7th Cir. 1996); *Benson v. Northwest Airlines, Inc.,* 62 F.3d 1108, 1114–15 (8th Cir. 1995).

Here, the main issue in the parties' competing motions for summary judgment is whether Plaintiff was reasonably accommodated in her current job as Assistant Principal. Defendant argues that Plaintiff's role as Assistant Principal was no longer a reasonable accommodation because it caused an undue hardship. (Doc. No. 57 at 10-11). Because Plaintiff's absences caused Plaintiff's duties to fall on the Principal or the principal designees, Defendant was entitled to withdraw the unsuccessful accommodation. (*Id.*). Defendant assigned Plaintiff to the homebound teaching position because the flexible hours and scheduling allowed Plaintiff to cancel at the last minute, and many of the job duties could be done at home. (*Id.* at 19). Defendant argues Plaintiff was qualified for the homebound teaching position and there were no other positions available within Wilson County Schools that offered flexible scheduling. (*Id.*). Plaintiff responds her Assistant Principal position reasonably accommodated her requests for intermittent leave, flexible hours in the morning, and a private bathroom. (Doc. No. 52 at 13). Plaintiff argues that her attendance at school improved from the 2014-15 school year to the 2015-2016 school year. (*Id.* at 17). During the 2014-2015 school year Plaintiff was tardy 21 times due to her medical condition and exercised

31 days of FMLA leave, which totals 52 days. (*Id.*). However, during the 2015-2016 school year Plaintiff had twenty-five fewer medical absences, which Plaintiff argues is evidence that Defendant's alleged reason for removing Plaintiff from Assistant Principal did not actually motivate that action. (*Id.*). Finally, Plaintiff argues the homebound teaching position was not a reasonable accommodation because it did not take into account or accommodate her known need for ready access to a private restroom. (*Id.* at 15).

Generally, transfer or reassignment of an employee is only considered when accommodation within the individual's current position would pose an undue hardship. *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 634 (6th Cir. 1998) (citing *Pattison v. Meijer, Inc.,* 897 F. Supp. 1002, 1007–08 (W.D. Mich. 1995)). An employer may reassign an employee to a lower grade and paid position if the employee cannot be accommodated in the current position and a comparable position is not available. *Pattison,* 897 F. Supp. at 1007–08. The ADA defines "undue hardship" as "an action requiring significant difficulty or expense, when considered in light of":

> (i) the nature and cost of the accommodation needed under this chapter;
> (ii) the overall financial resources of the facility or facilities involved in the provision of the reasonable accommodation; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility;
> (iii) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and
> (iv) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative, or fiscal relationship of the facility or facilities in question to the covered entity.

42 U.S.C.A. § 12111(10)(B)(i)-(iv).

Defendant's argument speaks to the second factor for undue hardship, but Defendant is silent on the remaining factors. Defendant asserts Laurie Drummond complained the school was suffering with Plaintiff in the Assistant Principal role with flexible hours and that Ms. Sparks received an

email from Peggy Druyor that she was frustrated with Plaintiff. (Doc. No. 53 ¶¶ 43-45). However, Plaintiff disputes these facts and argues the school was not suffering and staff and teachers who worked at the school every day were not aware of complaints regarding Plaintiff's performance as Assistant Principal. (Doc. Nos. 54, 55, 56; Hyder Decl., Kemp Decl., Jackson Decl.). Viewing the evidence and drawing all reasonable inferences in favor of the nonmoving party, the Court must accept all the statements as true. Accordingly, Plaintiff and Defendant's motions for summary judgment on Plaintiff's ADA failure to accommodate is **DENIED** because there are genuine issues of material fact regarding whether Plaintiff's position as Assistant Principal caused an undue burden on Defendant.

### 4. Failure to Engage in Interactive Process

To determine the appropriate modification or adjustment necessary to accommodate an employee, the ADA's regulations indicate that "it may be necessary for the [employer] to initiate an informal, interactive process with the qualified individual with a disability in need of accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3). While not set forth in the text of the ADA, the Sixth Circuit has held that "the interactive process is mandatory, and both parties have a duty to participate in good faith." *Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 556 (6th Cir. 2008). Accordingly, "[w]hen a party obstructs the process or otherwise fails to participate in good faith, 'courts should attempt to isolate the cause of the breakdown and then assign responsibility.'" *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d at 871 (6th Cir. 2007) (quoting *Bultemeyer v. Fort Wayne Cmty. Schs.*, 100 F.3d 1281, 1285 (7th Cir. 1996)). Importantly, however, failure to engage in the interactive process is only an independent violation of the ADA if the plaintiff establishes a *prima facie* showing that he

proposed a reasonable accommodation, *Rorrer v. City of Stow*, 743 F.3d 1025, 1041 (6th Cir.2014) (citing *Keith v. Cnty. of Oakland*, 703 F.3d 918, 929 (6th Cir.2013)), or if a reasonable accommodation would have been possible. *Lafata v. Church of Christ Home for Aged*, 325 Fed.Appx. 416, 422 (6th Cir. 2009) (citing *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1114 (9th Cir. 2000) (*en banc*), *judgment vacated on other grounds*, 535 U.S. 391, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002)).

As discussed above, *supra* B.3, it is disputed as to whether Plaintiff's accommodation as Assistant Principal had become unreasonable as a matter of law. However, even if the Court were to find Plaintiff's accommodation as Assistant Principal had become unreasonable, Plaintiff proposed no different accommodation after Defendant assigned her to homebound teacher. (Doc. No 53 ¶¶ 77, 78, 81); *see also Jakubowski v. Christ Hosp., Inc.,* 627 F.3d 195, 202–03 (6th Cir. 2010) ("[T]he employer is not required to propose a counter accommodation in order to participate in the interactive process in good faith."). Plaintiff also did not request details regarding the duties of a homebound teacher. (*Id.* ¶ 78). Instead, on May 27, 2016, Plaintiff notified Defendant she was retiring at the end of the 2015-16 school year. (*Id.* ¶ 86). The Court finds Plaintiff has not offered any evidence of lack of good faith on Defendant's part and **GRANTS** Defendant's motion for summary on Plaintiff's failure to engage in the interactive process claim.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is **DENIED** in its entirety, Defendant's Motion for Summary regarding Plaintiff's FMLA interference, FMLA retaliation, and ADA failure to accommodate is **DENIED** and Defendant's Motion for Summary Judgment regarding Plaintiff's ADA discrimination and ADA fail to engage in the interactive process is **GRANTED**.

It is so **ORDERED**.

_____

WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE